IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CAMPANILE INVESTMENTS LLC, JOAQUIN JUAN BOSCO GARZA MUGUERZA, | § § § § | |
| *Plaintiffs,* | § § | SA-17-CV-00337-FB |
| vs. | § § | |
| WESTMORELAND EQUITY FUND LLC, ED RYAN,  AMERICAN ESCROW AND SETTLEMENT SERVICES, BERNARD FELDMAN, ELIAS CORREA MENENDEZ, ALAN FELDMAN, LYDECKER, LEE, BERGA & DE ZAYAS, LLC, | § § § § § § § § § § | |
| *Defendants.* | § | |

## **ORDER**

Before the Court in the above-styled cause of action are Defendant Sandy Hutchens Motion to Compel Arbitration and Dismiss or to Stay [#98] and Defendant Bernard Feldman Motion to Compel Arbitration [#127].  The Court held a hearing on Defendant Hutchens's motion to compel arbitration on April 24, 2019, at which counsel for Plaintiffs appeared in person and Defendant Hutchens and Defendant Feldman, both of whom are proceeding *pro se*, appeared telephonically.  At the hearing, the Court asked the parties to file supplemental briefing on Hutchens's motion.  Subsequent to the hearing, Feldman filed his own motion to compel arbitration.

In reviewing the two motions, the Court has considered the following written filings: Plaintiffs' Response to Ed Ryan a/k/a Sandy Hutchens' Motion to Compel Arbitration and Dismiss or Stay [#100], Plaintiffs' Second Supplement to their Response to Ed Ryan a/k/a Sandy Hutchens' Motion to Compel Arbitration and Dismiss or Stay [#125], Sandy Hutchens Reply to

1

Plaintiffs' Second Supplement to Motion to Compel [#129],[1] and Plaintiffs' Response to Bernard Feldman's Motion to Compel Arbitration [#130].

All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#7]. The undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A).[2] For the reasons set forth below, the Court will deny Defendant Sandy Hutchens Motion to Compel Arbitration and Dismiss or to Stay [#98] and Defendant Bernard Feldman Motion to Compel Arbitration [#127].

## I. Procedural Background

This case has had a lengthy procedural history, despite the fact that the Court is just now considering two motions to compel arbitration. Plaintiffs Campanile Investments LLC and Joaquin Juan Bosco Garza Muguerza originally filed this action on April 17, 2017 against Defendants Westmoreland Equity Fund ("Westmoreland"), Ed Ryan ("Hutchens"), American

---

[1] Hutchens filed a Motion for Permission to File Reply to Plaintiffs' Second Supplement to Motion to Compel Arbitration on May 6, 2019 [#126], asking the Court for permission to file a reply. Plaintiffs filed a response in opposition to this motion [#128]. While the motion was still pending, Hutchens filed his reply [#129]. The Court will therefore dismiss his motion for permission as moot.

[2] Because the denial of a motion to compel arbitration is non-dispositive, the undersigned can issue an order rather than a report and recommendation. The Fifth Circuit has not yet directly addressed whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1). However, the two courts of appeals to have considered this issue have held that such motions are non-dispositive. *See Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133–34 (3d Cir. 2014); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010). In addition, the federal district courts in Texas to have considered this issue have consistently treated motions to compel arbitration as non-dispositive. *See Adams v. Energy Transfer Partners*, No. 2:16-CV-400, 2017 WL 2347425, at *1 (S.D. Tex. May 30, 2017); *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No 2:12–cv–572–JRG, 2016 WL 7157421, at *2 (E.D. Tex. Dec. 7, 2016), *aff'd*, 878 F.3d 488 (5th Cir. 2017), *cert. granted*, 138 S. Ct. 2678 (2018); *Tige Boats, Inc. v. Interplastic Corp.*, No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *1–3 (N.D. Tex. Dec. 21, 2015).

Escrow and Settlement Services ("AESS"), and Feldman regarding an "advance-fee loan scam" allegedly perpetrated by Defendants in connection with Plaintiffs' efforts to obtain financing for the purchase of a condominium in San Antonio, referred to as Four Oaks Tower. (Orig. Compl. [#1] at ¶ 1.) Plaintiffs allege that Westmoreland—a company solely owned and managed by Hutchens—agreed to loan Plaintiffs $7.5 million for the purchase of Four Oaks Tower, and Plaintiffs remitted $480,935.00 in advance fees to Westmoreland and AESS (a now defunct Florida-based LLC owned by Feldman), but Westmoreland refused to disburse the loan funds, terminated the agreement, and has failed to return the advance fees. (Compl. [#1] at ¶ 2.) As a result, Plaintiffs allege that the seller terminated Plaintiffs' exclusive option to purchase Four Oaks Tower. (*Id.*)

Plaintiffs filed an Amended Complaint on October 6, 2017, which added Elias Correa Menendez, Alan Feldman, and the law firm of Lydecker, Lee, Berga & De Zayas, LLC ("Lydecker") as additional Defendants. (Am. Compl. [#15].) Plaintiffs alleged that Hutchens and Feldman engaged Lydecker and two of its attorneys Defendants Alan Feldman (Bernard Feldman's son) and Menendez to assist with the scam. (*Id.* at ¶ 48.) Plaintiffs filed a Second Amended Complaint on January 11, 2018, alleging claims of fraud, negligent misrepresentation, civil conspiracy, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and conversion against all Defendants, as well as a claim of breach of contract against Westmoreland. (*Id.* at ¶¶ 57–94.) Lydecker, Alan Feldman, and Mendendez subsequently filed a motion to compel arbitration, which was dismissed as moot after Plaintiffs reached a settlement agreement with these Defendants [#50]. These Defendants were dismissed with prejudice from this lawsuit on May 4, 2018 [#62].

Plaintiffs also reached a settlement in principle with Feldman and AESS and advised the Court of the same on March 29, 2018 [#51].  Issues arose with the finalization of the settlement agreement between Plaintiffs and Feldman, which resulted in the Court repeatedly extending the deadline for the filing of a stipulation of dismissal as to this Defendant [#63, #70].  The settlement agreement was never consummated, and Plaintiffs have resumed litigation against Feldman [#74].  On April 24, 2019, Plaintiffs filed their Third Amended Complaint, which is the live pleading in this case, to add causes of action for breach of contract against Westmoreland and for breach of the settlement agreement with Feldman and AESS.[3]  (Third Am. Compl. [#115] at ¶¶ 89–92.)

That leaves Hutchens and Westmoreland.  Plaintiffs struggled to locate and serve Hutchens with process for the first year of this lawsuit, eventually moving for an order allowing alternative service via international mail at a new address for Hutchens in Ontario, Canada.  The Court granted the motion on July 11, 2018 and ordered Plaintiffs to direct their service request to the Canadian Central Authority for Ontario in compliance with the Hague Convention [#70].  Hutchens was finally served on September 23, 2018 [#77], and Hutchens appeared in this action for the first time on October 15, 2018 [#80].[4]  Hutchens filed the motion to compel arbitration currently before the Court five months later on March 15, 2019, arguing that a binding

---

[3] Feldman purported to file an answer to Plaintiff's Third Amended Complaint on behalf of AESS on May 14, 2019, but AESS as an LLC cannot represent itself in federal court.  (*See* Order Denying Mtn. to Set Aside [#114].)  Plaintiffs have yet to file a motion for Clerk's entry of default or default judgment against AESS on this basis.

[4] Before Hutchens was served and appeared in this action, the Clerk issued an entry of default against Westmoreland—the LLC Hutchens singly owns and operates [#76]. After appearing, Hutchens moved to set aside the default, arguing that Westmoreland was never properly served.  The Court denied the motion on the basis that Westmoreland, a single-member limited liability corporation, cannot represent itself without licensed counsel in federal court [#114].

agreement requires Plaintiffs to arbitrate their claims against him before an arbitrator in Miami, Florida.

Plaintiffs' response to the motion argues that the Court should not enforce the arbitration agreement because it was procured by fraud. Plaintiffs contend that Hutchens, a resident of Canada, failed to disclose (and has known since at least 2013) that he is barred from entering the United States by the U.S. Department of Homeland Security due to a prior criminal conviction and therefore has never been available to adjudicate any dispute arising between the parties in the chosen arbitral forum of Miami.

Feldman filed his motion to compel arbitration, which is also addressed by this report and recommendation, on May 7, 2019, arguing that, although he was not a signatory to the arbitration agreement at issue, Plaintiffs should be compelled to arbitrate their claims against him under the doctrine of equitable estoppel. The two motions to compel arbitration are now ripe for the Court's review.

## II.  Legal Standard

Courts apply a two-step inquiry in determining whether the parties have agreed to arbitrate a claim. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). In the absence of a valid clause delegating the threshold issue of arbitrability to the arbitrator, both steps are questions for the Court. *Id.*

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists.

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (5th Cir. 2003).  Hence, the party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate.  *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).  Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The arbitration agreement at issue in this case expressly references the Federal Arbitration Act ("FAA), 9 U.S.C. § 1, *et seq.*, and the agreement evidences a transaction involving interstate commerce.  (Arbitration Agreement [#98] at § 27, at 29.)  Accordingly, the FAA applies here.  *See* 9 U.S.C. § 2 (FAA applies to written arbitration agreements in contracts "evidencing a transaction involving commerce").  "Section 2 of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (quoting 9 U.S.C. § 2).  Accordingly, "as a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting § 2).  Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."  *Doctor's Assocs., Inc.*, 517 U.S. at 687.

### **III.  Analysis**

Defendants' motions to compel arbitration should be denied.  Although Hutchens has satisfied his burden to come forward with a valid agreement to arbitrate, Plaintiffs have established that the agreement is unenforceable because it was procured by fraud.  Because there is no enforceable agreement to arbitrate the parties' disputes in this action, there is no basis for Feldman's equitable estoppel argument.

The Second Amended Commitment executed on November 8, 2016 by Hutchens and Garza on behalf of Westmoreland and Campanile, respectively, contains a "mandatory arbitration" provision that states the following:

> Any Dispute between or among the parties hereto including but not limited to those arising out of or relating to this Commitment or any related agreements or instruments, including any claims based on or arising from an alleged tort, shall be resolved by binding arbitration in accordance with the terms of this Agreement.

(Commitment [#98] at ¶ 27, at 29.)  The arbitration provision defines "dispute" broadly as

> any action, dispute, claim or controversy of any kind, whether in contract or tort, statutory or common law, legal or equitable, now existing or hereafter arising under or in connection with, or in any way pertaining to, any of the Loan Documents, or any past, present or future extensions of credit and other activities, transactions or obligations of any kind related directly or indirectly to any of the Loan Documents, including without limitation, any of the foregoing arising in connection with the exercise of any self-help, ancillary or other remedies pursuant to any of the Loan Documents.

(*Id.*)  According to the arbitration provision, the arbitration is to occur in Miami, Florida in accordance with the American Arbitration Association's Commercial Arbitration Rules.  (*Id.*)

Neither party disputes that Plaintiffs' claims against Hutchens for fraud, negligent misrepresentation, civil conspiracy, violations of RICO, and conversion arise out of and pertain directly to the loan documents related to the mortgage agreement between the parties.  And the

Court agrees that the parties agreed to arbitrate any claim concerning the loan underlying this lawsuit.  The parties' dispute, rather, is whether this agreement is rendered unenforceable under state contract law due to fraud.   Plaintiffs contend that the arbitration agreement was procured by fraud because Hutchens, a Canadian resident, has known since at least 2013 (years before the Commitment was executed) that he is prohibited from entering the United States due to a criminal conviction and therefore has never been able to attend an arbitration in Miami, Florida.

An arbitration agreement is unenforceable if a party fraudulently induced the provision in violation of state law.  *See Doctor's Assocs., Inc.*, 517 U.S. at 687.  Where the fraudulent inducement pertains to the agreement to arbitrate, as opposed to the underlying contract as a whole, it is for the court—not the arbitrator—to decide whether the agreement should be enforced.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).

The arbitration agreement at issue in this case contains a choice of law provision designating the law of Pennsylvania as the law governing the agreement.  (Commitment [#98] at § 26, at 29.)  However, both parties argue the issue of fraudulent inducement under Texas law.  (*See* Hutchens's Supp. Brief [#116]; Pls.' Supp. Brief [#125].)  Failure to raise an argument before the district court as to choice of law results in waiver of the argument.  *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011).  Accordingly, the Court applies the law of the forum state—here, Texas—on the question of whether the arbitration agreement was procured by fraud, despite the choice of law provision in the arbitration agreement.  *See Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009).

Under Texas law, a party asserting fraudulent inducement as a defense to contract formation must establish that (1) there was a material representation made that was false; (2) the

party who made the representation knew that it was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the party making the representation intended to induce action upon the representation; and (4) the representation was actually and justifiably relied upon, thereby causing injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). "Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (internal quotation omitted).

Plaintiffs contend that Hutchens falsely represented through the arbitration provision that he would be available to personally appear for the examination and adjudication of any claims in Miami, Florida, when he knew the representation was false, and that Garza relied upon the representation in agreeing to arbitrate claims arising out of the loan commitment. Attached to Plaintiffs' response to Hutchens's motion to compel arbitration is an affidavit by Garza, stating that he has no connection to Miami, but that he agreed to arbitrate all disputes in Florida in reliance on the implicit representation by Hutchens that he was personally available to attend an arbitration in that state. (Garza Aff. [#100-1] at ¶ 6.) Garza further states that had Hutchens told him at the time that he was prohibited from traveling to the United States, he would not have agreed to Florida as the forum for the arbitration, as it is an inconvenient forum for Plaintiffs. (*Id.* at ¶ 8.)

An affidavit from one of Plaintiffs' attorneys establishes that Hutchens did not inform Plaintiffs of his inability to enter the United States until a December 7, 2018 phone conference in this case. (Montpas Aff. [#100-2] at ¶ 2.) Yet, a document issued by the U.S. Department of Homeland Security establishes that Hutchens was aware of his inability to enter the United States

9

at least as early as January 16, 2013. (Denial of Entry [#100-1] at 7–8.) A sworn declaration by Hutchens in a lawsuit filed in the Southern District of Florida further establishes that he attempted to travel by airplane from Toronto, Canada to Fort Lauderdale, Florida on January 16, 2013 but was unable to leave Canada because he was denied entry by the Department of Homeland Security due to his prior criminal convictions. (Hutchens Decl. [#102-2] at ¶¶ 1–2.)

Hutchens raises several arguments in response to Plaintiffs' allegations of fraudulent inducement, beginning with an assertion that a merger clause in the Second Amended Commitment precludes Plaintiffs' fraud defense. (Hutchens's Resp. [#116] at 5.) An integration or merger clause is a contractual provision that prevents the inclusion of prior arrangements between the parties in the contract because all such understandings have been merged into the written document. *Italian Cowboys Partners, Ltd.*, 341 S.W.3d at 335. Hutchens directs the Court to a merger clause at Section 12 of the Commitment, which states:

> This Commitment . . . together with the Security Documents and any other documents delivered on closing of the Loan transaction, will constitute the entire agreement and understanding between the parties with respect to the Loan and supersede all other agreements, understandings or commitments, oral or written.

(Commitment [#98] at ¶ 12, at 20.) Standard integration clauses have the effect of barring the introduction of parol evidence to establish the parties' intent in creating a contract unless the court first determines that the contract is ambiguous. *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796 (Tex. App.—Houston [1st Dist.] 2008, no pet.)

Although in some circumstances, a merger clause may bar claims of fraudulent inducement, that is not the case here. The Texas Supreme Court has made clear that "[p]ure merger clauses, without an expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement, have never had the effect of precluding claims for fraudulent

inducement." *Italian Cowboys Partners, Ltd.*, 341 S.W.3d at 334.  Where a clause includes a disclaimer of reliance specifically, however, such a disclaimer may be binding and conclusively negate the element of reliance in a suit for fraudulent inducement.  *Id.* at 332 (citing *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) ("[A] release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement.").  The merger clause contained in the parties' Commitment underlying this suit does not contain any express disclaimer of reliance and therefore does not waive Plaintiffs' fraudulent inducement defense to the parties' arbitration agreement.

Secondly, Hutchens argues that he never made any affirmative representation that he would be able to attend the arbitration in person and submits an affidavit swearing to the same. (Hutchens Aff. [#116-3] at ¶¶ 6–9.)  Yet the way the Court understands Plaintiffs' fraud argument and Garza's supporting affidavit is not as a representation that Hutchens expressly affirmed his ability to appear in Florida for the arbitration but rather that, by presenting a contract with an arbitration provision selecting Miami, Florida as the location for the arbitration, Hutchens implicitly represented his ability to appear in that location and participate fully in the arbitral process.  (*See* Garza Aff. [#100-1] at ¶ 6 ("By including a provision in the Second Commitment letter that provided for arbitration in Miami, Ryan represented to both Campanile and I that he could personally be in Miami to appear for examination and adjudication of any claims that Campanile and I have against him.").)  In other words, Hutchens's failure to disclose his inability to enter the United States in negotiating the arbitration agreement constituted fraud

11

through the omission of material facts, the disclosure of which would have altered contract negotiations.

"Fraud by omission is a subcategory of fraud because an omission or non-disclosure may be as misleading as a positive misrepresentation of fact when a party has a duty to disclose." *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2007, no pet.) Thus, failure to disclose information does not generally constitute fraud unless there is a duty to disclose the information. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). The duty to disclose may arise (1) when the parties have a confidential or fiduciary relationship, (2) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth, (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue, or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 670–71 (Tex. App.—Houston [14th Dist.] 2006, pet. filed). A confidential or fiduciary relationship will not arise simply by virtue of a business transaction; the special relationship must exist prior to, and apart from, the agreement made the basis of the suit. *Schlumberger Tech. Corp.*, 959 S.W.2d at 177. Further, one party's subjective trust does not convert an arm's-length transaction into a fiduciary relationship. *Id.*; *Ins. Co. of N. Am.*, 981 S.W.2d at 674.

Although Plaintiffs have not established that a fiduciary relationship exists between the parties to the arbitration agreement, the Court finds that Hutchens still had a duty to disclose his unavailability for the arbitration. Hutchens's selection of Miami as the venue for the arbitration

and presentation of that contractual term to Plaintiffs conveyed that he could and would appear in Miami, which was a false impression that gave rise to the duty to inform Plaintiffs of his inability to enter the United States. *See Ins. Co. of N. Am.*, 981 S.W.2d at 674.

Hutchens contends that his ability to appear in person at the arbitration is not critical to the fairness of the proceedings and therefore is not a material fact needed to disclose to Plaintiffs in order for Plaintiffs to make an informed decision regarding the arbitration agreement. Hutchens maintains that he can participate at the arbitration by telephonic or video conference and could even seek a waiver to enter the United States specifically for the arbitration. (Hutchens's Supp. Reply [#129] at 8.) To support this position, Hutchens directs the Court to various publications by the American Arbitration Association, JAMS, and the New York State Bar, all of which reference the presentation of deposition or witness testimony and evidence by video conference. (*See* AAA Commercial Arb. Rules [#121-1] at 22 ("When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephonic conferences and means other than an in-person presentation."); JAMS Arb. Rules [#122-2] at 25 (Deposition testimony can be presented by videotape.); (N.Y. State Bar Ass'n Arb. Primer [#122-1] at 15 (Witness testimony can be taken by phone or videoconference.").)

These resources may support the general principle that arbitrators have flexibility to conduct arbitration proceedings in any manner convenient for witnesses, but they do not speak to the the circumstances of this case: Hutchens is a party—not merely a witness—yet he failed to disclose his inability to attend the arbitration in person. Stated another way, the fact that an arbitrator may choose, in consultation with the parties, to arrange for certain evidence to be presented by video does not speak to the issue here—the undisclosed unavailability of the party

13

drafting the arbitration agreement in the venue that party chose for arbitration. Hutchens's unavailability is a material fact because "a reasonable person would attach importance to [it] and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 337 (internal quotation omitted). Hutchens selected Miami, Florida as the location for the parties' arbitration; Hutchens knew he was barred from entering the United States at the time the contract was drafted; the selection of Miami, Florida as the location for the arbitration communicated to Plaintiffs that Hutchens could participate fully in such arbitration; yet Hutchens chose not to inform Plaintiffs that he in fact could not do so. Plaintiffs relied on this incomplete information in agreeing to arbitrate in Miami, Florida; Plaintiffs have established they were fraudulently induced into agreeing to arbitrate their claims in Miami, Florida. *See Ernst & Young, L.L.P.*, 51 S.W.3d at 577.

Because the Court finds the arbitration agreement at issue was procured by fraud, the Court will deny Hutchens's motion to compel arbitration. This holding dictates that Feldman's motion to compel arbitration should also be denied. Feldman argues that Plaintiffs must arbitrate their claims against him, even though he is not a signatory to the contract, under the doctrine of equitable estoppel, which provides that in certain circumstances an arbitration agreement may be enforceable even as to a non-signatory. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007). Because there is no enforceable arbitration agreement, Feldman is not entitled to an order compelling Plaintiffs to arbitration as a non-signatory.

**IT IS HEREBY ORDERED** that Defendant Sandy Hutchens's Motion for Permission to File Reply to Plaintiffs' Second Supplement to Motion to Compel Arbitration on May 6, 2019 [#126] is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant Sandy Hutchens Motion to Compel Arbitration and Dismiss or to Stay [#98] and Defendant Bernard Feldman Motion to Compel Arbitration [#127] are **DENIED**.

SIGNED this 22nd day of May, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE