IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CAMPANILE INVESTMENTS LLC,      §
JOAQUIN JUAN BOSCO GARZA      §
MUGUERZA,      §
     §
     §
    *Plaintiffs,*     §
     §
     §
vs.      §     SA-17-CV-00337-FB
     §
WESTMORELAND EQUITY FUND      §
LLC, ED RYAN,  AMERICAN ESCROW      §
AND SETTLEMENT SERVICES,      §
BERNARD FELDMAN, ELIAS CORREA      §
MENENDEZ, ALAN FELDMAN,      §
LYDECKER, LEE, BERGA &AMP; DE      §
ZAYAS, LLC,      §
     §
    *Defendants.*     §

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns three motions for summary judgment: Plaintiffs' Motion for Summary Judgment as to Defendant Bernard Feldman [#131]; Defendant Ed Ryan's Motion for Summary Judgment Pursuant to RFCP 12(b) for Want of Subject Matter Jurisdiction [#145]; and Defendant Bernard Feldman's Motion for Summary Judgment Pursuant to FRCP 12(b) for Want of Subject Matter Jurisdiction [#146].

Also before the Court are the following responses to the motions:  Defendant Bernard Feldman's Response to Plaintiffs' Motion for Summary Judgment [#137]; Plaintiff's Reply in Support of their Motion for Summary Judgment as to Defendant Bernard Feldman [#140]; Plaintiffs' Response to Defendant Sandy Hutchens's Motion for Summary Judgment [#147]; Plaintiffs' Response to Defendant Bernard Feldman's Motion for Summary Judgment [#148];

and Defendant Ed Ryan's Rebuttal to Plaintiff's Response to Motion to Dismiss Pursuant to FRCP 12(b) for Want of Subject Matter Jurisdiction [#150].

This case was referred to the undersigned for disposition of all pretrial proceedings pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas on June 6, 2017 [#7]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Plaintiff's motion [#131] be granted in part and Defendants' motions [#145, #146] be denied.

## I. Background

Plaintiffs Campanile Investments LLC ("Campanile ) and Joaquin Juan Bosco Garza Muguerza ("Muguerza") originally filed this action on April 17, 2017 against Defendants Westmoreland Equity Fund ("Westmoreland"), Ed Ryan ("Hutchens"), American Escrow and Settlement Services ("AESS"), and Feldman regarding an "advance-fee loan scam" allegedly perpetrated by Defendants in connection with Plaintiffs' efforts to obtain financing for the purchase of a condominium in San Antonio, referred to as Four Oaks Tower. (Orig. Compl. [#1] at ¶ 1.) Plaintiffs allege that Westmoreland—a company solely owned and managed by Hutchens—agreed to loan Plaintiffs $7.5 million for the purchase of Four Oaks Tower, and Plaintiffs remitted $480,935.00 in advance fees to Westmoreland and AESS (a now defunct Florida-based LLC owned by Feldman), but Westmoreland refused to disburse the loan funds, terminated the agreement, and has failed to return the advance fees. (Compl. [#1] at ¶ 2.) As a result, Plaintiffs allege that the seller terminated Plaintiffs' exclusive option to purchase Four Oaks Tower. (*Id.*)

Plaintiffs filed an Amended Complaint on October 6, 2017, which added Elias Correa Menendez, Alan Feldman, and the law firm of Lydecker, Lee, Berga & De Zayas, LLC ("Lydecker") as additional Defendants. (Am. Compl. [#15].) Plaintiffs alleged that Hutchens and Feldman engaged Lydecker and two of its attorneys Defendants Alan Feldman (Bernard Feldman's son) and Menendez to assist with the scam. (*Id.* at ¶ 48.) Plaintiffs filed a Second Amended Complaint on January 11, 2018, alleging claims of fraud, negligent misrepresentation, civil conspiracy, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and conversion against all Defendants, as well as a claim of breach of contract against Westmoreland. (*Id.* at ¶¶ 57–94.) Lydecker, Alan Feldman, and Mendendez subsequently filed a motion to compel arbitration, which was dismissed as moot after Plaintiffs reached a settlement agreement with these Defendants [#50]. These Defendants were dismissed with prejudice from this lawsuit on May 4, 2018 [#62].

Plaintiffs also reached a settlement in principle with Feldman and advised the Court of the same on March 29, 2018 [#51]. The parties both signed the written settlement agreement shortly thereafter [#131-1, at 10]. Issues arose between Plaintiffs and Feldman regarding Feldman's failure to make timely payments in accordance with the terms of the settlement agreement, which resulted in the Court repeatedly extending the deadline for the filing of a stipulation of dismissal as to this Defendant [#63, #70]. The parties were unable to resolve their dispute over the missed payments, and Plaintiffs resumed litigation against Feldman [#74]. On April 24, 2019, Plaintiffs filed their Third Amended Complaint, which is the live pleading in this

case, to add causes of action for breach of contract against Westmoreland and for breach of the settlement agreement with Feldman and AESS.[1]  (Third Am. Compl. [#115] at ¶¶ 89–92.)

Plaintiffs struggled to locate and serve Hutchens with process for the first year of this lawsuit, eventually moving for an order allowing alternative service via international mail at a new address for Hutchens in Ontario, Canada.  The Court granted the motion on July 11, 2018 and ordered Plaintiffs to direct their service request to the Canadian Central Authority for Ontario in compliance with the Hague Convention [#70].  Hutchens was finally served on September 23, 2018 [#77], and Hutchens appeared in this action for the first time on October 15, 2018 [#80].[2]  Hutchens and Feldman both moved to compel arbitration, arguing that a binding agreement required Plaintiffs to arbitrate their claims against them before an arbitrator in Miami, Florida.  The Court denied the motions to compel arbitration, concluding that the arbitration agreement at issue was procured by fraud [#135].  Hutchens and Feldman filed objections to the order denying their motions to compel arbitration [#138, #139], and the District Court affirmed the undersigned's Order on September 13, 2019 [#152].

Plaintiffs and Defendants Hutchens and Feldman have now filed motions for summary judgment.  Plaintiffs seek summary judgment against Defendant Bernard Feldman on their claim for breach of the parties' settlement agreement.  Defendants Ed Ryan (a/k/a Sandy Hutchens)

---

[1] Feldman purported to file an answer to Plaintiff's Third Amended Complaint on behalf of AESS on May 14, 2019, but AESS as an LLC cannot represent itself in federal court. (*See* Order Denying Mtn. to Set Aside [#114].)  Plaintiffs have yet to file a motion for Clerk's entry of default or default judgment against AESS on this basis.

[2] Before Hutchens was served and appeared in this action, the Clerk issued an entry of default against Westmoreland—the LLC Hutchens singly owns and operates [#76]. After appearing, Hutchens moved to set aside the default, arguing that Westmoreland was never properly served.  The Court denied the motion on the basis that Westmoreland, a single-member limited liability corporation, cannot represent itself without licensed counsel in federal court [#114].

and Bernard Feldman ask the Court to dismiss all claims asserted against them for lack of subject matter jurisdiction. Although styled as a motion for summary judgment, Defendants' motions in fact re-urge their position that the parties should be compelled to arbitrate their dispute. Defendants contend that the Court lacked authority to adjudicate whether the parties' arbitration agreement was procured by fraud because the contract delegates all questions of arbitrability to the arbitrator, not this Court. The Court first addresses Defendants' motions.

## II. Analysis

### A. Defendants' Motions [#145, #146]

Defendants Hutchens and Feldman are each representing themselves *pro se* in this matter. By their motions, Hutchens and Feldman contend that the Court erred in denying their motions to compel arbitration. Defendants style their motion as a motion for summary judgment but argue for dismissal of Plaintiffs' claims based on the lack of subject matter jurisdiction under Rule 12(b)(1). The Court should construe these motions as motions for reconsideration and deny the motions.

As previously noted, the Court denied Defendants' motions to compel arbitration on May 22, 2019, holding that the parties' arbitration agreement was unenforceable because it was procured by fraud [#135]. Defendants had the opportunity to appeal this order to the District Court and did so by filing objections [#138, #139]. The District Court considered the objections, construed them as an appeal, and affirmed the undersigned's ruling [#152]. Defendants now again argue that this Court erred in denying their motions to compel arbitration. In doing so, Defendants advance an argument not fully developed in their previous filings—that this Court lacked authority to consider Plaintiffs' arguments as to fraudulent inducement because the

parties' contract contains a delegation provision delegating issues of arbitrability to the arbitrator.

According to Defendants' motions, the arbitrator, not this Court, is the only decisionmaker with jurisdiction to interpret and determine the validity of the parties' contract. The Fifth Circuit recently clarified that agreements to arbitrate do not implicate questions regarding a federal court's subject matter jurisdiction but are instead a special kind of contractual agreement implicating forum selection and claims-processing rules. *Ruiz v. Donahoe*, 784 F.3d 247, 250 & n.14 (5th Cir. 2015). "Subject-matter jurisdiction properly comprehended . . . refers to a tribunal's 'power to hear a case,' a matter that 'can never be forfeited or waived.'" *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81–82 (2009) (citations and quotations omitted). Because "mandatory grievance and arbitration procedures in contracts . . . are waivable [they] do not affect this court's subject-matter jurisdiction." *Ruiz*, 784 F.3d at 249. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00. (Orig. Compl. [#1] at ¶ 12.)

Defendants' motions therefore essentially represent an attack on the Court's prior order denying their motions to compel arbitration, as opposed to a challenge to the Court's subject-matter jurisdiction. Accordingly, the Court should construe Defendants' motion as motions for reconsideration of a prior Court Order. The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. Such motions are therefore generally analyzed under the standards for a motion to alter or amend a judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147

F.3d 367, 371 n.10 (5th Cir. 1998). A motion for reconsideration under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(b). Otherwise, the motion falls under Rule 60. Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time—and . . . no more than a year after the entry of the judgment or order or the date of the proceeding."). Because Defendants filed their motion more than 28 days after Court issued the challenged order, their motion is governed by Rule 60(b).

Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is not longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A Rule 60(b) motion may also be used "to rectify an obvious error of law, apparent on the record." *Benson v. St. Joseph Reg'l Health Ctr.*, 575 F.3d 542, 547 (5th Cir. 2009) (internal quotation and citation omitted). "The cases show that although the courts have sought to accomplish justice, they have administered Rule 60(b) with a scrupulous regard for the aims of finality." 11 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2857 (2d ed. 2010). Moreover, relief under 60(b) is "extraordinary" and the requirements of the rule must be strictly met. *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir. 1992).

Defendants have not demonstrated that they are entitled to the extraordinary remedy provided by Rule 60(b). Their motions advance arguments regarding arbitrability that

Defendants could have, but failed to, fully develop in their motions to compel arbitration. Defendants point to no new evidence or mistake of the Court; they simply contend that the Court erred in its legal analysis and should vacate its prior order and compel arbitration. Rule 60(b) is not a vehicle for unsuccessful parties to relitigate a case under a different theory. *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356–37 (5th Cir. 1993). Defendants do nothing more here.

Moreover, even if the Court were to consider Defendants' legal arguments under Rule 60(b), the Court would not vacate its prior order because Defendants' arguments lack merit. Defendants confuse the question of who decides whether a party's claims are covered by the arbitration agreement—issues of arbitrability—with the question addressed in the Court's previous order—who decides whether the arbitration agreement is enforceable in the first instance. Defendants argue that the parties' contract delegates all questions of arbitrability (whether specific claims are subject to arbitration) to the arbitrator. This is a different issue than whether the arbitration agreement is unenforceable because it was procured by fraud.

As stated in the Court's prior order (*See* Order [#135] at 6), an arbitration agreement is unenforceable if a party fraudulently induced the provision in violation of state law. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Like other contracts, arbitration agreements may be invalidated by "generally applicable contract defenses arising under state law, such as fraud, duress, or unconscionability." *Id.* Where the fraudulent inducement pertains to the agreement to arbitrate, as opposed to the underlying contract as a whole, it is for the court—not the arbitrator—to decide whether the agreement should be enforced. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).

8

Parties can freely agree to arbitrate "gateway" questions of "arbitrability" through adopting a delegation clause, such that the arbitrator decides whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-A-Ctr.*, 561 U.S. at 68–69. However, if a party challenges the validity of the precise agreement to arbitrate at issue, the federal court *must consider* the challenge before ordering compliance with that agreement. *Id.* at 71.

That is precisely what the Court did here, when it determined that Plaintiffs' fraudulent inducement argument attacked the agreement to arbitrate—not the contract as a whole. Accordingly, the Court did not lack authority and did not err in adjudicating this threshold issue regarding the enforceability of the parties' arbitration agreement. The question of arbitrability as addressed by any delegation clause was not at issue in the Court's opinion and is not relevant now. Accordingly, the Court should deny Defendants' motions.

**B.      Plaintiffs' Motion for Summary Judgment as to Bernard Feldman**

Plaintiffs ask the Court to grant them summary judgment against Feldman on their claim of breach of the parties' settlement agreement and to award them liquidated damages of $1,000,000.00 and of $5,600.00 in reasonable and necessary attorneys' fees. The motion should be granted as to breach and attorneys' fees, but the parties should submit supplemental briefing to the District Court on the question of whether the liquidated-damages provision is enforceable or is an impermissible penalty.

  i.      Summary Judgment Record

The undisputed summary judgment record establishes that Plaintiffs reached a settlement of the claims asserted in this lawsuit with Feldman and AESS, which required Feldman to pay Campanile $25,000.00 by paying an initial sum of $5,000.00 and then subsequent monthly

payments in an amount of $333.33 over the course of 60 months.  (Settlement Agreement [#131-1] at 6.)  In exchange for these payments, Plaintiffs agreed to dismiss their claims against Feldman and AESS and release them from liability in this lawsuit.  (*Id.*)  Feldman executed the settlement agreement individually and on behalf of AESS on March 30, 2018.  (*Id.* at 10; Muguerza Aff. [#131-1] at ¶ 4.)  Muguerza executed the agreement individually and on behalf of Campanile on April 3, 2018.  (Settlement Agreement [#131-1] at 10; Muguerza Aff. [#131-1] at ¶ 5.)  As part of the agreement, Feldman executed an affidavit summarizing his role in the advance loan scheme underlying this lawsuit.  (Feldman Aff. [#131-1] at 11–13.)

Feldman's first payment of $5,000.00 was due on May 1, 2018.  (Settlement Agreement [#131-1] at 6.)  Feldman did not make the payment as required under the agreement.  (Muguerza Aff. [#131-1] at ¶¶ 7–9, E-mail Correspondence [#131-2] at 5–35.)  Feldman attempted to obtain an extension of time for the payment and ultimately asked Plaintiffs if the initial payment could be made over 12 months due to his financial circumstances.  (E-mail Correspondence [#131-2] at 5–35.)  It is undisputed that to date Feldman has never paid any amounts owed under the settlement agreement.  (Muguerza Aff. [#131-1] at ¶¶ 7–9; Feldman Resp. [#137] at 1.)  Feldman maintains he is unable to make the required settlement payments because he lacks the assets to do so.  (Feldman Resp. [#137] at 1–3.)

     ii.     Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

iii.     Analysis

Plaintiffs are entitled to summary judgment on their claim that Feldman breached the parties' settlement agreement. Plaintiffs' Third Amended Complaint alleges that Feldman and AESS breached the parties' settlement agreement by failing to pay any amounts they were obligated to pay Plaintiffs. (Third Am. Compl. [#115] at ¶ 92.) Plaintiffs allege they are entitled to $1,000,000 in liquidated damages and reasonable and necessary attorneys' fees. (*Id.*) To prevail on their claim of breach of contract under Texas law,[3] (1) the existence of a valid

---

[3]  The settlement agreement provides that it shall be construed in accordance with the laws of the State of Texas, which is consistent with this Court's obligation as a federal court presiding based on its diversity jurisdiction. (Settlement Agreement [#131-1] at ¶ 6.)

contract; (2) performance or tendered performance by Plaintiffs; (3) breach of the contract by Feldman; and (4) damages sustained by Plaintiffs as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Hous. [14th Dist.] 2005, pet. denied)) (internal quotations omitted).

Feldman does not dispute that the parties entered into a valid contract. He simply maintains that Plaintiffs "knew and understood that [he] was in no position to pay monies according to the terms of the Settlement Agreement" and therefore the time of payment was never agreed upon. (Feldman Resp. [#137] at 4.) According to Feldman, this means there was no breach and the contract remains in effect today. (*Id.*)

The Court should reject Feldman's argument and find that he breached the settlement agreement when he failed to make the initial payment or any subsequent payment on the dates established by the parties' written agreement. Again, the agreement provides that Feldman's first payment was due within 14 days of the execution of the Agreement or by May 1, 2018, whichever comes later. (Settlement Agreement [#131-1] at ¶ 1.) The parties executed the agreement on April 3, 2018, making Feldman's first payment due on May 1, 2018. (*Id.* at 10.) Payments of $333.33 were due on the 15th day of each consecutive month for the next 60 months. (*Id.* at ¶ 1.)

Texas recognizes the defense of impossibility to a breach of contract action, where a party to a contract can demonstrate he is unable to perform under the contract's terms. *Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.*, 118 S.W.3d 60, 66 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). *See also Toyo Cotton Co. v. Cotton Concentration Co. Inc.*, 461 S.W.2d 116, 118 (Tex. 1970); *Foster v. Atl. Refining Co.*, 329 F.2d 485 (5th Cir. 1964). "Where a party's performance is made impracticable 'by the occurrence of an event the nonoccurrence of

which was a basic assumption on which the contract was made, his duty to render that performance is discharged . . . .'" *Internacional Realty, Inc. v. 2005 RP W., Ltd.*, 449 S.W.3d 512, 548 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992)). Central to this defense is the "unexpected occurrence of an intervening act," the non-occurrence of which "was a basic assumption of the agreement of the parties." *Burch v. Tech. Sys. Integrators, LLC*, No. CIV.A. G-11-192, 2012 WL 3527881, at *1 (S.D. Tex. Aug. 15, 2012). This is the direct inverse of Feldman's argument, which is that Plaintiffs were aware of his dire financial circumstances from the outset of settlement negotiations and that "nothing had changed in the intervening weeks" leading up to the execution of the agreement. (Feldman Resp. [#137] at 1–2.) Feldman does not argue that any intervening act occurred that would potentially excuse his non-performance, only that Plaintiffs understood he had no intention of making payments on time, despite the clear timeline for payment set forth in the parties' written agreement. Feldman, although a *pro se* party, is not an unsophisticated one, as he was formerly a licensed attorney capable of reading and understanding the plain language of the contract. Because Feldman has not advanced any defense that might excuse his failure to perform, the Court should find that he breached the agreement.

The Court should also reject Feldman's argument that the settlement agreement is subject to arbitration because Section 17 of the agreement references "a Demand for Arbitration." (Settlement Agreement [#131-1] at 10.) Section 17 sets forth the requirements for notice with respect to any aspect of the agreement, "including but not limited to a Demand for Arbitration," and establishes the addresses at which each party is to receive such notice. There is no agreement to arbitrate contained in the parties' settlement agreement. Moreover, Section 5 of the settlement agreement clearly states that the parties agree to litigate "[a]ny disputes regarding

breach of this Agreement or the enforcement of the terms and conditions of the Agreement" in the United States District Court for the Western District of Texas, San Antonio Division. (Settlement Agreement [#131-1] at ¶ 5.) Nor is there any other enforceable arbitration agreement between the parties, as previously held by this Court.

Because Plaintiffs have established that Feldman breached the settlement agreement, Plaintiffs are entitled to recover reasonable attorneys' fees incurred as a result of the breach. Per the parties' settlement agreement, any party found to have breached the agreement "shall pay all of the non-breaching [p]arty's reasonable and necessary attorney's fees and costs incurred in enforcing" the agreement. (Settlement Agreement [#131-1] at ¶ 4.) Texas law also provides for the recovery of reasonable fees on a claim for breach of contract. Tex. Civ. Prac. & Rem. Code § 38.001(8). Feldman does not contest that Plaintiffs are entitled to recover their reasonable fees under the terms of the contract and Texas law.

Plaintiffs have met their burden to prove the reasonable fees incurred. Attached to Plaintiffs' motion is the affidavit of David M. Prichard, lead counsel for Plaintiffs. (Prichard Aff. [#131-3].) Mr. Prichard attests that his partner David R. Montpas expended 14.0 hours at a rate of $400.00 to prepare Plaintiffs' motion for summary judgment for a total fee request of $5,600.00.[4] (*Id.* at ¶ 5–7.) Mr. Prichard asserts that this work was reasonable and necessary. (*Id.* at ¶ 8.) Feldman does not contest the reasonableness of the claimed fees, and the Court finds the requested amount to be reasonable in light of the issues involved, the fee charged for similar services in the San Antonio legal market, and the experience of counsel. *See generally Arthur*

---

[4] Prichard's Affidavit computes Montpas's time at a rate of $480.00 per hour after stating that Mr. Montpas bills his time at a rate of $400.00. (Prichard Aff. [#131-3] at ¶ 7.) The Court interprets this is a typographical error, in light of the fact that the requested total fees of $5,600.00 is the result of 14.0 hours at a rate of $400.00 not $480.00.

*Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (setting forth factors for consideration in evaluating reasonableness of fees).

The question of whether Plaintiffs should be entitled to recover $1,000,000.00 in liquidated damages for Feldman's breach is less straightforward. "The term 'liquidated damages' ordinarily refers to an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach." *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005). Texas courts recognize a distinction between enforceable "liquidated damages" clauses and unenforceable "penalty" clauses. *See*, *e.g.*, *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 766 (Tex. 2005). The policy underlying the prohibition against penalties is to ensure that a party is compensated for losses sustained and no more. *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 69 (Tex. 2014); *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952).

For a liquidated-damages clause to be enforceable, "the court must find: (1) that the harm caused by the breach is incapable or difficult of estimation, and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991) (quoting *Rio Grande Valley Sugar Growers, Inc. v. Campesi*, 592 S.W.2d 340, 342 n.2 (Tex. 1979)). Both findings are "indispensable." *FPL Energy*, 426 S.W.3d at 69. That is, if either element is lacking, the clause is unenforceable. The court should evaluate a liquidated-damages clause "from the perspective of the parties at the time of contracting." *Id.* at 69–7; *see also Baker v. Int'l Record Syndicate, Inc.*, 812 S.W.2d 53, 55 (Tex. App.—Dallas 1991, no writ) ("Evidence related to the difficulty of estimation and the reasonable forecast must be viewed as of the time the contract was executed.").

Whether a damages provision is a liquidated-damages or a penalty clause is a question of law for the court to decide. *See Phillips*, 820 S.W.2d at 788 (Tex. 1991). "The party asserting that a liquidated-damages clause is a penalty provision bears the burden of pleading and proof." *Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 438 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Phillips*, 820 S.W.2d at 789). Although Feldman does not expressly argue that the liquidated-damages provision is an unenforceable penalty, Feldman does contend that the clause "bears no relationship" to actual damages. (Feldman Resp. [#137] at 2–3.) The Court interprets this as Feldman raising the issue for adjudication by this Court as to whether $1,000,000.00 is an unenforceable penalty if assessed as liquidated damages against Feldman. To make this determination, the court may need to first resolve certain factual issues, such as the amount of actual damages. *See FPL Energy*, 426 S.W.3d at 70; *see also Phillips*, 820 S.W.2d at 788. A liquidated-damages provision may be unreasonable "because the actual damages incurred were much less than the amount contracted for." *Phillips*, 820 S.W.2d at 788. If a damages provision is found to be a penalty, the court should limit recovery to actual damages. *See id.*

Feldman has not submitted any evidence or case law in support of his contention that the liquidated damages provision bears no relationship to actual damages. The undersigned is concerned that $1,000,000.00 may indeed not be "a reasonable forecast of just compensation." *See Phillips*, 820 S.W.2d at 788. Accordingly, the parties should submit additional briefing and/or evidence on this issue so the District Court can determine whether to award the liquidated damages amount or some other amount as damages for breach.

### III.  Conclusion and Recommendation

Having considered the parties' motions, the responses and replies thereto, the record in this case, and the governing law, the undersigned recommends the following:

- Defendant Ed Ryan's Motion for Summary Judgment Pursuant to RFCP 12(b) for Want of Subject Matter Jurisdiction [#145] and Defendant Bernard Feldman's Motion for Summary Judgment Pursuant to FRCP 12(b) for Want of Subject Matter Jurisdiction [#146], which the Court construes as Motions for Reconsideration, be **DENIED.**

- Plaintiffs' Motion for Summary Judgment as to Defendant Bernard Feldman [#131] be **GRANTED** as follows:

  o Summary judgment be granted to Plaintiffs on their breach of contract claim against Bernard Feldman for breach of the parties' settlement agreement;

  o Plaintiffs be awarded reasonable attorneys' fees in the amount of $5,600.00.

**IT IS HEREBY ALSO ORDERED** that the parties brief the District Court during the 14-day objection period as to whether the liquidated-damages provision is enforceable and state their positions on actual damages.  Upon review of the parties' briefing, it is recommended that the District Court determine whether to enforce the provision or to impose a lesser amount as damages for Feldman's breach.

### IV.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to

which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

    SIGNED this 20th day of September, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE